**In re Zachary B. ANTONIO.**

No. 91–568–M.P.

Supreme Court of Rhode Island.

June 16, 1992.

James E. O'Neil, Atty. Gen., Caroline Cole Cornwell, Sp. Asst. Atty. Gen., for plaintiff.

Ina P. Schiff, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is a petition for a writ of mandamus requiring the Chief Judge of the Family Court, Jeremiah S. Jeremiah (respondent), to recuse himself from any further consideration of the petitioner's divorce action now pending in the Family Court, *Antonio v. Antonio*, F.C. No. P91-1718. On November 15, 1991, this court entered an order directing that an alternative writ of mandamus issue, that the petitioner prepare such writ for service upon the respondent, and that proceedings in *Antonio v. Antonio* be stayed pending further order of this court. For the reasons stated herein, the petitioner's alternative writ of mandamus is quashed and the stay of proceedings in the case below is vacated. The pertinent facts are as follows.

The petitioner, Zachary B. Antonio (Zachary), is the defendant in the divorce action below. Marie P. Antonio (Marie) and Zachary were married in 1980 and have four children, a son, aged 7, and three daughters, aged 5, 4, and 2. In April 1991 Zachary was hospitalized at Butler Hospital. During that hospitalization, Marie commenced divorce proceedings against him, at which time she had custody of the four children.

On July 2, 1991, General Master O'Brien of the Family Court (master) entered an order establishing Marie's weekly temporary support needs at $500. Within hours of the entering of that order, Marie contacted Zachary and reported that their son was totally uncontrollable, and that she was unable to handle him. Consequently, on July 3, 1991, the son moved in with Zachary. Shortly thereafter, Zachary filed a motion to vacate the order fixing Marie's weekly temporary support, primarily on the ground that Marie's financial needs had materially changed because she now only cared for three of the four children. However, Zachary also alleged that: (1) the order was based in part on false testimony by his wife, (2) the trial court denied him the opportunity to present substantive evidence in opposition to his wife's motion, including prior inconsistent statements of his wife, (3) the trial court improperly limited his cross-examination of his wife, which precluded him from presenting evidence suggestive of a continued psychological impairment, which impairment affects his wife's ability to care for her children and her ability to tell the truth, and (4) the trial court's decision was clearly erroneous and contrary to law.

Following the filing of Zachary's motion to vacate, the master referred the matter to respondent, apparently because the master had been transferred to the Washington County Family Court. Originally respondent had agreed to handle the case. However, upon learning that the master had already taken testimony in the case, respondent stated that he would be referring the case back to the master for a completion of the hearing, to commence on October 11, 1991. Apparently the master was scheduled to sit in Providence County on that day. The respondent expressed to both counsel that an order would be entered to that effect.

On October 11, 1991, Attorney Toro, counsel for Marie, was at the Providence

Family Court waiting for the *Antonio* case to be reached. However, he directed Marie to attend work that day because, he claims, she desperately needed the income to support the children. Arrangements were made that if the case was reached, Marie would be contacted and arrive at the courthouse immediately.

When the matter was called before the master, he indicated that he would not hear the case, and he referred the case back to respondent. While the parties were in the master's chambers, respondent entered and engaged in a conversation with the master. The conversation was described as loud and hostile. However, it involved a matter completely separate and apart from the *Antonio* case.

It is undisputed that the master referred the *Antonio* case back to respondent, but there is a dispute between the parties as to what occurred thereafter. Counsel for Marie claims that Attorney Schiff (counsel for Zachary) stated to him that respondent was in a bad mood and that perhaps they should wait awhile to see him about the *Antonio* case. Marie's counsel states that at no time was it agreed that they would pass the case or leave the building. Zachary's counsel, however, claims that the two agreed to wait and schedule the case for another time and, hence, she left the courthouse. In any event, Marie's counsel went to respondent's courtroom and waited for the court to complete the matter which was before it. When that matter was completed, respondent stated that he was ready for the *Antonio* case, and inquired as to where Zachary and his counsel were. Marie's counsel stated that he thought that they were in the corridor of the building, and claims that he made a bona fide attempt to locate them. Zachary's counsel, however, claims that Marie's counsel knew that she and her client had left the courthouse, and that Marie's counsel misrepresented the situation to the court. Marie's counsel then informed the court that Zachary and his counsel could not be located. The respondent proceeded by asking what motions were before the court, and Marie's counsel described the pending motions. During the hearing respondent stated:

"I want the record to show I am very upset Miss Schiff is not in this courtroom. I did not relieve her of any responsibility. I did not tell her I was not taking the case. She should have been here."

Three motions were considered at this hearing: Zachary's motions for extensions of time in which to respond to discovery, Marie's motions to compel discovery and her motion for temporary allowance. Marie's motions to compel discovery were granted, and Zachary's motions for extension of time were denied. Marie's motion for temporary allowance was scheduled for hearing on October 17, 1991.

Counsel for Marie then left the courthouse and returned to his office. However, he immediately realized that there were two other motions which were pending that he had neglected to mention to the court: Marie's motion to deny Zachary access to his children's educational and medical records and Zachary's motion for temporary support. Counsel for Marie admits that he then called respondent from his office, informed him of his dilemma, and asked him if it was the court's desire to have him return to the courthouse and place those motions on the record for a ruling. However, respondent directed counsel to include those motions in the order that he was directed to prepare. The respondent granted Marie's motion and denied Zachary's motion via telephone. An order was prepared to that effect and sent to Zachary's counsel, who later filed a motion to vacate those orders entered in her absence. The respondent vacated the two orders which were disposed of on the telephone but denied the motion to vacate the remaining provisions of that order, which had been decided at the October 11 hearing.

On October 29, 1991, Zachary filed a motion to recuse respondent, which was summarily denied. Zachary also filed a motion to stay the divorce proceedings in this court on October 30, 1991, and a petition for a writ of mandamus on November 14, 1991, to require Chief Justice Jeremiah to recuse himself from Zachary's case.

This court granted his request for a stay and ordered that an alternative writ of mandamus issue. In the writ of mandamus in the alternative, respondent was ordered to recuse himself or show cause that he need not do so.

Zachary asserts that respondent engaged in improper activity which warrants an order from this court requiring him to recuse himself from any further proceedings in the case below. Specifically, Zachary claims that respondent engaged in two separate ex-parte communications with counsel for Marie: (1) the hearing on October 11, 1991, and (2) the telephone call made by Marie's counsel to respondent shortly after the conclusion of the October 11 hearing. Zachary contends that when the case was finally referred to respondent, before the matter was placed on the record in open court, the two attorneys agreed that they would meet respondent at another time to obtain a date for hearing on another day. Also Zachary states that the master did not direct a court clerk or counsel to transport the case file to respondent as, she contends, is the custom when a matter is to be heard by another judge on the same day. Thus, Zachary claims that Marie's counsel approached respondent ex parte on October 11 and that, as a result of that exparte communication, an agreement was reached to proceed to hearing. Also Zachary alleges that the fact that Marie's counsel called respondent and discussed the pending motions reflects the "cozy relationship" that existed between the bench and the bar.

■ It is axiomatic that judges are obligated to recuse themselves in the event that they are unable to render fair and impartial decisions in their cases. *State v. Cruz*, 517 A.2d 237 (R.I.1986). The standard for responding to motions for recusal was set forth in *State v. Clark*, 423 A.2d 1151, 1158 (R.I.1981):

"[A] judge has as great an obligation not to disqualify himself when there is no occasion to do so as he has to do so when the occasion does arise. * * * Before a judge is required to recuse in order to avoid the appearance of impropriety, facts must be elicited indicating

that it is reasonable for members of the public or a litigant or counsel to question the trial justice's impartiality. However, recusal is not in order by a mere accusation that is totally unsupported by substantial fact."

Furthermore, a litigant must establish facts showing that the trial justice has a "personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his impartiality seriously and to sway his judgment." *Cavanagh v. Cavanagh*, 118 R.I. 608, 621, 375 A.2d 911, 917 (1977). Moreover, the moving party must prove that this alleged bias and prejudice stemmed from an extrajudicial source and that the judge based his decision on facts and events not pertinent before the court. *In re Kean*, 520 A.2d 1271, 1277 (R.I.1987); *State v. Nidever*, 120 R.I. 767, 390 A.2d 368 (1978).

■ The husband in the case at bar clearly fails to satisfy the standard for a recusal motion. In support of his motion, Zachary seems to rely most heavily on the appearance of impropriety occasioned by the "ex parte" October 11 hearing and the ensuing telephone conversation between respondent and Marie's counsel. He cites these acts as examples of the "cozy relationship" which he claims exists between the bench and the bar in this matter. At the outset we note that we strongly disagree with Zachary's characterization of the October 11 hearing. In our opinion, that hearing was not an ex-parte communication. The record shows that the matter was scheduled to be heard and, although after some confusion and delay, was in fact heard. Whether there existed an agreement between the two attorneys as to rescheduling, this in no way affected respondent's handling of the matter. Moreover, even if some agreement existed between the attorneys, there is nothing in the record to illustrate that the respondent had any such knowledge. We recognize that the transcript of the hearing shows respondent's irritation and impatience at counsel for her absence. These comments, however, do not persuade us that respondent harbors a personal bias or prejudice toward either Zachary or his counsel based on a

preconceived or settled opinion. As we have previously stated, mere criticism does not indicate prejudice. *Cavanagh*, 118 R.I. at 621, 375 A.2d at 917.

■ With respect to the telephone call made by Marie's attorney to respondent, in which motions were decided upon, we agree with Zachary that this conduct raises a question of impropriety. This conduct is no doubt inappropriate and unacceptable. However, we are of the opinion that, on the specific facts of this case, Zachary has not been prejudiced. The respondent, upon Zachary's request, vacated those two motions. Thus, any prejudice that Zachary may have suffered has been eliminated. The respondent's actions clearly illustrate that he does not harbor any personal prejudice or bias against Zachary or his counsel. To the contrary, respondent's conduct illustrates his ability to respond favorably and impartially to Zachary's request when such response is warranted. Accordingly, although inappropriate, the telephone call and subsequent conduct are not facts which would lead a reasonable person to seriously question respondent's impartiality.

■ Zachary claims that a "cozy relationship" exists between respondent and Marie's counsel and that this relationship gave rise to the allegedly inappropriate conduct which occurred in this case. However, Zachary offers no facts or evidence that the relationship between the bench and the bar in this case is more than mere acquaintanceship. In *State v. Clark*, 423 A.2d at 1158, we upheld the trial justice's refusal to recuse himself from a case in which he was acquainted with the prosecutor even though his prior law firm had rented space to that prosecutor prior to the trial justice's appointment to the bench. We reasoned that although the bench and the bar were acquaintances, there was nothing in the record to suggest that that trial justice acted impartially based on that relationship. *Id.* To hold that mere acquaintanceship between the bench and bar requires recusal of the trial justice, particularly in a state the size of Rhode Island, would result in a collapse of the state's

judicial system. *Id.* Absent additional facts or evidence that gives the appearance of impropriety, the fact that members of the bench and the bar are acquaintances is not grounds for recusal. *State v. Romano*, 456 A.2d 746, 754 (R.I.1983). Here Zachary fails to offer any such additional evidence. Accordingly, we conclude that the facts of this case do not warrant the recusal of respondent.

■ In reaching this conclusion, we must offer a comment on some of Zachary's additional allegations that his motion to recuse should have been granted. Zachary argues that respondent violated Canon 8 of the Canons of Judicial Ethics, which requires judges to be courteous to and to display respect to other persons involved in the judicial system. Zachary contends that respondent violated this rule by interrupting the conference in the master's chambers by engaging in loud, hostile, and unrelated conversation with the master. Although it is unfortunate that counsel was subjected to such unpleasantry displayed by the bench, there is nothing in the record and nothing offered by Zachary to persuade us that the hostile conversation in any way translated into bias or prejudice toward him at the subsequent hearing. It is undisputed that the conversation was unrelated to the case at bar and, as such, is not a sufficient showing of reason for recusal of respondent.

■ Zachary also argues that respondent has displayed bias and an inclination toward premature judgment. Zachary seems to base this allegation on the fact that respondent granted various rulings in favor of Marie and against Zachary. We have stated that adverse rulings alone do not show bias or prejudice on the part of the trial justice. *Cavanagh*, 118 R.I. at 623, 375 A.2d at 918. Absent additional facts or evidence to support this contention, nothing in the record persuades us that respondent harbored bias or prejudice which affected his impartiality in this case.

■ The only other allegation offered by Zachary in support of his recusal motion which merits our consideration involves a

complaint purportedly filed by him against the respondent with the Commission on Judicial Tenure and Discipline. Zachary argues that the mere filing of the complaint clearly suggests at least the appearance of impropriety on the part of the respondent. Zachary cites Canon 4 of the Rhode Island Canons of Judicial Ethics in support of this contention. As a matter of policy, the mere filing of such a complaint as a ground for recusal would encourage judge shopping and cannot stand. To allow attorneys to engage in such behavior would in essence allow the attorneys to circumvent the entire judicial system.

For the reasons stated, Zachary's alternative writ of mandamus is quashed. The stay of proceedings in the case below is vacated. The case is remanded to the Family Court for further proceedings.